Case number 15-1390, Walter Barry et al. v. Nick Lyon. Argument not to exceed 15 minutes per side. Mr. Smith, you may proceed for the pallet, but just when you're ready. Thank you. Good morning. Good morning, your honors. May it please the court. Assistant Attorney General Joshua Smith, on behalf of the defendant appellant. And I would like to reserve your honor three minutes for rebuttal, if I may. Thank you. There are several issues presented in this case. I think the most pertinent and substantive issues are whether there's a private right to action to enforce the particular provisions of the Food and Nutrition Act at issue. And whether 7 U.S.C. Section 2015-K preempts Michigan law. And I think to a large extent, all of this boils down to a more fundamental question. And that is, who defines the terms in the statute? And who sets the standards for enforcement for these particular provisions of the Food and Nutrition Act? Specifically, though, Section 2015-K, the so-called fugitive felon provision. Now, in the present case, Congress specifically delegated the definition of key terms to the Secretary of Agriculture. The terms fleeing and actively seeking. There are two possibilities for enforcement here. One is via individual litigants in each district court in the nation. And the other is a uniform standard set by the Secretary of Agriculture. Well, let me ask you this. Mr. Smith, is it? Is it true that the state's process and timeline for implementing this new federal rule, once it goes into effect, will occur on November 9th of this year? That is correct, Your Honor. So why are we here if it's just a matter of a month until all this is going to change? Well, that's a good point. And I think that both opposing counsel and I addressed that in our supplemental filings before this court, which I believe were just last month. If we look at the language of the proposed federal regulation and if we look at the Michigan statute, on November 9th, I think it's fair to say that the Michigan statute is effectively preempted on this issue. That is, MCL 400.10b, subsection 2, specifically contains a non-enforcement clause. And what that means is when an anticipated final regulatory action by the Department of Agriculture, which has, I believe, been pending since the summer of 2011. But what that statute essentially says, the Michigan statute, is that this section shall not be enforceable against recipients of federal benefits, which would be cash assistance and food assistance, once that final regulation becomes law, which, as you said, Your Honor, is on November 9th. Wait a minute. What does that non-enforcement mean now? On November 9th, the federal regulation becomes applicable to the state of Michigan. Is that not correct? It is correct. So why are we still litigating this case? I would agree that this case is essentially based on the final regulation because that essentially sets the standard that every state and state program in the country will have to follow. Okay, and the Michigan system did not meet that statute prior to now. In other words, anybody with a warrant, a felony warrant, there was some kind of automatic thing that just popped them out of the food assistance program. Is that right? Well, essentially what happened, Your Honor, is to some extent it's right. Okay, and that's going to have to change. That is correct. And is Michigan ready to see that change as of the 9th of November? As of November 9th, Michigan will not be enforcing the Fugitive Felon Provision in MCL 400.10B. All right, and have they put plans into effect, or do they have plans that will allow them to do the right thing, follow the federal regulation as of the 9th? Not at this point, Your Honor. Essentially what Michigan will have to do is first amend its state plan. And as the Board is probably aware, every food and nutrition act programmed by a state first starts out with the state submitting a state plan for approval by the feds. And Michigan will have to amend its state plan, and it will have to conform with one of the two tests set forth in the final regulation. And then the second step. Well, how long have we known that federal regulation was coming? We've known that the federal regulation was coming for a little over four years at this point, Your Honor. So why hasn't the plan already been changed? Well, the problem is that it was a proposed regulation, and I think it's fair to say the state did not know what direction that final regulation would take. All right, it was proposed. When did it become approved? I believe it was September 7th. I might be wrong on that. Of this year? Of this year. It was the first full week of September, Your Honor. But at this point, you're under an injunction, as I understand it. That is correct. And what is Michigan doing under the injunction? Michigan is not enforcing the fugitive felon disqualification. At all? At all? Not with regard to these programs, no, Your Honor. We've been enjoined from enforcing it. Okay. And so it is possible that there are some people with legitimate federal fugitive warrants against them who are actually receiving food assistance at this point? At this point, that's possible under the injunction, Your Honor, because we have been enjoined from disqualifying them, absent the conditions set forth in the district court's order. And I think that's one of the important things, too, about the federal regulation. When we look at the district court's order, it covers the requirements to disqualify individuals from these programs for the fugitive felon status at its docket entry 91, page ID 2727. And the court essentially set forth a two-part test. And that two-part test is, and I'll be largely paraphrasing here, the state cannot disqualify a person from participating in the food assistance program unless they have an outstanding felon warrant without first doing two things. The first is determining that the person is intentionally fleeing to avoid prosecution, custody, confinement, or conviction, or after conviction, excuse me. And the second part, law enforcement is actively seeking the person. Now, that's a two-part test. The final federal regulation, though, sets forth two different tests. The first test is a four-part test. It's a fairly onerous test, but it's a fairly detailed test. The first is that the individual has an outstanding felony warrant. That's the first element of this test. The second element is that the person knows or reasonably should expect that a felony warrant has been issued against that person. The third element is that the person in question has taken some effort or action to avoid apprehension by law enforcement, to elude the warrant or avoid arrest. And the fourth element is that law enforcement is actively seeking the person in question. Well, that all adds up to the two-part test that you're under now. You know, if you want to argue semantics, we can, but basically that's what it is. You have to be actively fleeing, and the criminal prosecution has to be a threat, and the authorities need to be actually looking for you. I would respect that. I mean, when you measure that against the background of some of the people that are involved in this class action, the named plaintiffs, doesn't that make sense? Well, I think that there's a, and I'm going to address a couple of points in there, Your Honor. I think that the Michigan program also makes sense within the confines of the statute, but obviously the program where you get a list of everybody with a warrant against them and you run it through the food assistance and you knock out everybody with a notice that is not all that much of a notice, that's a fair system? I think that's a fair system under the statute, Your Honor. Counsel, don't you have to concede that in many instances a warrant can be issued against an individual and they have no knowledge that that's outstanding? I mean, every time a warrant is issued, it doesn't mean that law enforcement immediately starts pursuing them. It might lie dormant for some time. So doesn't that basically violate fundamental due process? And isn't that one of the big flaws in the current Michigan system? That is possible, and at least in the present case there are allegations that it happened with certain of the named plaintiffs. I think the distinction here, though, is twofold. First of all, a warrant is an active process. I think that the district court wrongly characterized it as purely passive, Your Honor. That is, first of all, law enforcement has to actively enter that information, actively not prosecute that warrant, but enter that information such that law enforcement is indeed actively seeking the person. Well, but the fact that you enter the information doesn't mean that law enforcement is actively seeking. It means that the warrant is live, and the warrant might lie for months. A person, you know, eventually on a traffic stop, they can look at the system and see that there's a warrant, and then take action. But it doesn't mean that the minute that warrant is entered, that law enforcement deploys its forces and starts to seek that individual. So I think you're defining the term seeking much broader than probably the law envisions. Well, I think the actively seeking part is a key part of this statute, Your Honor. And for the reason that actively seeking only appears in 2015K in one instance, and that is under subsection 2, which expressly delegates to the secretary to define what that term means for purposes of a consistent, uniform national standard to apply to all state programs. So in that sense, I think that that term essentially had to be filled in by the secretary, and it has been filled in. So the actively seeking part, I think that the district court jumped in to define a term that was expressly delegated by Congress to the secretary. But, Your Honor, that would only be true until the 9th of November. That is correct, Your Honor. And I do want to point out, too, that I didn't state the second part of the test before, but the final regulation does include two different tests that states can use. The first was the four-part test that I explained before. The second one is a much simpler test that simply requires law enforcement to present the state department or agency with a valid outstanding felony warrant that falls under certain guidelines or certain federal codes. I believe that's the so-called Martinez test. That was a test that was not anticipated in the district court's order. So I don't think that the district court's order does conform with what the final regulation was. That's fine, but we're talking about 30 days from now or 31 or something like 35. I don't know. So it doesn't seem like it's worth putting all the resources into this litigation when what somebody should be doing is trying to get the plan drawn up, the state plan that will conform with the new federal regulation and get moving on this. That may be an editorial comment. I see my time is up. If I could just briefly address your question, Your Honor. Thank you. The state is working on that. And what this will involve is not only the state of Michigan amending its plan, but also working with the federal government to make sure that it's an amendment that's acceptable because the second part of that is the state doesn't just amend its plan. It has to be accepted by the federal government. So it has to be a plan that conforms with the regulation and accepted by the federal government. And unless and until that happens after November 9th, Michigan cannot and will not be enforcing its fugitive felon provision. Thank you, Your Honor. Okay. Thank you. Morning. Good morning, Your Honors. My name is Jacqueline Doig, and I'm representing the appellees here. As the court has recognized, if there was ever any doubt about what the federal statute regarding fleeing felons means, it has been resolved by the final rule that was issued on September 10th. That rule conclusively rejects the defendant's arguments about their ability to impose a disqualification on individuals solely because they have an outstanding felony warrant. The new regulation is entirely consistent with the district court's order in this case. There is no conflict here between what the district court ordered and what the federal rule contains. In the four-part test that Mr. Smith has discussed with you this morning, the first three parts of that test go to the intentional fleeing. The last part goes to the actively seeking part of the definition that is set forth in the statute. With regard to the second alternative test, the so-called Martinez test, that requires that an outstanding felony warrant be issued for three specific crimes, each of which has intent to evade prosecution or confinement as an element of the crime. Those, by definition, incorporate that intentional fleeing piece of the district court's order. Then, it is not the mere existence of a warrant for those three particular crimes that can trigger a disqualification. There has to be the presentment by law enforcement of that warrant to the State Department of Health and Human Services, specifically to get information about the person named in the warrant so that they can be apprehended. It is that piece that satisfies the requirement that the person be actively sought. Again, there is nothing new here. In addition, if there were no problem with the definitions of the terms in here, there is still a due process problem with the notice, isn't there? Correct. Absolutely. Even if there was a concession as to the test, there would be this part about what constitutes an adequate notice. I guess, as long as they're not enforcing it at all, the question about the notice is moot, in a sense. Well, the notice is important because that is part of why the State is not enforcing. Certainly. And can't enforce without changing the notice. That's correct, Your Honor. And it's important to remember that the due process claim, Count 1 under the Due Process Clause of the 14th Amendment, applies to all of the assistance, the needs-based assistance programs, cash, child care, and food assistance, whereas Counts 3 and 4 are only on food assistance. Correct, Your Honor. Okay. Let me ask this. When you all filed this suit and you did get class certification, is that right? Yes. You were seeking an injunction and you got an injunction. Was there anything else by means of relief that you were seeking? We sought declaratory and injunctive relief, all of which was granted by the District Court, and we also sought notice to the class of that declaratory and injunctive relief under Corn v. Jordan, and those notices have gone out to 20,000 class members, and thousands of class members have been receiving assistance as a result of the injunction issued here. So this case, you know, certainly was not moot on January 9th when the District Court issued its order, and the benefits for all of those individuals, you know, are at risk. Will continue, and they will continue as long as the injunction is in place, and I would assume you would want it to stay in place until the Michigan plan is actually in effect. I'm trying to find out if we need to send this back down to the District Court, for example, to let the judge there determine whether the injunction should be lifted or not. I think, Your Honor, that there would be no basis to lift the injunction until perhaps the state voluntarily comes into compliance with the federal regulation, but even then, you know, we have really not even assurances that the state is going to implement as of November 9th when the federal regulation is the law of the land. So I'm saying what you want here is for that injunction to continue until they do come into compliance. And I think at that point, I'm not even sure it requires guidance from this court. At that point, if the state feels that they have a basis to modify the injunction, they can go in under Rule 60B and file a motion without, you know, if or when down the line that happens. So, counsel, in light of what you've just said, with respect to the action before the court today and in light of the looming November 9th date, what do you see is the relief this court, if any, should give? What action should we take at this juncture? I believe the court should do nothing. Are you saying we should just affirm the District Court and do that, or should we do anything at this point? I think the court should affirm the District Court's decision. It was correct when it was entered. It's still correct because there is no conflict with the new regulation. And certainly the due process claims continue and are important issues that need to be decided and affirmed by this court. They are not mooted out in any way or affected in any way, really, by the new rule. So, yes, I believe the court should simply affirm the District Court opinion here. Thank you. One question I did want to touch on briefly. Judge Daughtry, you asked whether or not individuals who were legitimate, or I forget the term you used, but actually fleeing felons, whether or not they were receiving assistance as a result of the District Court's order. The District Court's order left the state free to disqualify individuals in compliance with the federal statute if they determined that they were intentionally fleeing and actively sought. Now, if the state has not done that, it has not done that because it has not modified its system to create procedures for determining those things. Whether that's actually happening. Right, and also to issue, again, a notice that complies with due process as ordered by the District Court. I wanted to just touch briefly on the due process claim here and also to answer any questions you might have about private right of action or preemption. I think that the District Court's opinion was 97 pages long. It was very thorough. I think that it did not give short shrift to any of the issues that were raised by the defendant. But if you have questions, I'd be glad to answer those. But as to the due process claim, the District Court's conclusion that the defendant's notice violated due process is firmly supported by Supreme Court precedent as well as prior decisions of this court. For over 75 years since Morgan v. United States, it has been black letter due process law that in order to have a meaningful hearing, you must have adequate notice. And that notice is an essential element of the right to be heard. Since Goldberg v. Kelly in 1970, it has been black letter law that when a state is depriving a needy individual or family of needs-based assistance, it is absolutely required that they provide a notice that details the reasons for the action being taken and tells the person exactly what that action is. This court in Hamby v. Neal has made it clear that that notice also must clarify for the individual what the steps are that they can take to receive assistance that they are entitled to. Here, the notice that in essence just says you or a member of your group is disqualified because of a criminal justice disqualification does not encompass any of those due process requirements. It doesn't tell whose conduct is causing the disqualification. It doesn't tell what the nature of that disqualification is. And there are five different kinds under state policy. You could be disqualified as a probation violator, as a convicted drug felon, as a food assistance trafficker, or you could be disqualified, as is the case for the named plaintiffs here, because you are a so-called fugitive felon. But you're never going to know which of those five reasons applies from reading the notice that just says criminal justice disqualification. The notice, likewise, does not explain how long the disqualification lasts or how you can lift it. So individuals who receive this notice have no way of knowing really what the underlying basis is and how they could requalify for assistance or, indeed, if they could ever requalify for assistance under the state policy. So the notices here clearly were not detailed enough to give individuals receiving them a basis to know whether to request a hearing. And I think that was particularly important for the named plaintiffs here, one of whom mistakenly thought that she was being disqualified because she had an old misdemeanor conviction. So she just thought that was it. That was why she was disqualified. The conviction was there, so she had no idea that it was not related to that, that it was based on this fugitive felon policy. She had no idea that there were steps she could take to requalify. So she did not bother to request a hearing. And that's the kind of factual scenario that has played out over and over again. So it's clear that there is a substantial increased likelihood of error because of these inadequate notices. And the defendant has not shown that there's any undue burden required to meet the notice standards that the district court set forth. So the district court was acting well within its discretion in setting the scope of the injunction here. I think that's all I had on the merits. I would be glad to talk about private right of action or the preemption issues if you have questions, Your Honor. I don't. I don't have any. Thank you. Then we would request that the district court's order be affirmed in order to protect the assistance being received by thousands of Michigan households who are low income, who desperately need that assistance. The district court, as I said, it didn't give short shrift to anything. Its opinion is well reasoned. It's right on the facts, right on the law, and well within the court's discretion. Thank you. Thank you, Ms. Doik. Mr. Smith? Thank you, Your Honor. So, Mr. Smith, she wants us to affirm, which will leave the injunction in place. Looking at your brief, you want us to just to reverse and dismiss the case completely. That's correct, Your Honor. And then what will the state of Michigan do? Well, as of November 9th, the state will not and, in fact, cannot enforce the fugitive felon provision. So that's why I think that moving forward, that aspect of the case is moot. And at least prospectively, there is no need for that injunction after that point. Because, again, the point of the injunction is to ensure that the state is complying with the district court's order. Well, what assurance do we have that you will, beginning on the 9th, when there is no plan yet? And does the plan have to go through the legislature? Do we know? State plan amendments typically do not have to go through the legislature, Your Honor. It's put together by the department, whichever department that is. In this case, it's the Michigan Department of Health and Human Services. Okay. So they're working on a plan. In the meantime, we've got the injunction. What is the harm in leaving it in effect? I think the harm is it unnecessarily subjects Michigan's program to court oversight when it's unnecessary. Because the statute at question, MCL 400.10b, specifically states that that fugitive felon provision cannot be enforced as to the federal benefits programs once the final regulation is in place. So for that part of the case, it cannot, in fact, be enforced. But let me just suggest this. If Michigan legally supposed to do something that it doesn't do, wouldn't these people have to come back into court and get a new injunction? What's the point of that? I don't think that they would have to come back into court. I don't know what they would get an injunction for. Because, again, the point here ñ Noncompliance with the federal regulation after November the 9th. I don't think that these plaintiffs or any individual plaintiffs would have standing to say to the state of Michigan that you have to disqualify fugitive felons. But doesn't that potentially invite potentially additional litigation? Wouldn't the better course be to leave this injunction in place? Because Michigan also has the ability, once it fashions its plan and the new law comes into effect, to go into court and say there's no longer need for the injunction. The district court could evaluate that and decide to dissolve the injunction, couldn't they? Yes. With all due respect, though, I think the problem here is that after November 9th, the locus of the enforcement really is the Secretary of Agriculture. That is, these plaintiffs would have no standing to go into court and say, you know what? This regulation right here says that you should be disqualifying some of us for being fugitive felons under these steps. The only entity that would have standing to do that would, in fact, be the U.S. Department of Agriculture. And couldn't the state of Michigan go into court and present that argument to the district court judge as a basis for dissolving the injunction? The state of Michigan could do that. I think the better course is simply for this court to recognize prospective mootness to order that the injunction is vacated as of November 9th. But more importantly, for all of the reasons, and I see my time is up, if I may briefly summarize, Your Honor. Did I adequately answer your question, or would you like me to address that further, Judge Donaldson? No, I mean, you did. I know you said that just trust Michigan. I understand that. It's not at all trust Michigan. The fact is that after November 9th, Michigan doesn't have a fugitive felon policy. And to conform to federal law, that's an issue for the Secretary of Agriculture. And in other program areas, what has happened is, hopefully it doesn't happen in this case, but it can take considerable time to amend a state plan. It could take years. And the enforcement entity is the federal agency in question, not individual litigants at that point. But in response to Judge Daughtry's earlier question, there is nothing that ensures that there is going to be compliance with that federal law. And I understand we're not deciding that issue, but that's the reality. But it could take years. And if it does take years, that means that people who are fugitive felons are not being disqualified, which is exactly what the district court ordered. So its injunction at that point, in fact, would be. Well, the district court apparently did order that if the state of Michigan could show that they were enforcing the disqualification only against those who were intentionally fleeing and actively sought, they could carry forth. And that conflicts with the Martinez test, which is also under regulation. So truly, as of November 9th, that part of this case really is moot. And the injunction should be vacated as to that. But I also think, for the reasons stated in my brief, that there is no private right of action, that the notices did satisfy due process, and that the district court's opinion should be reversed, and this case should be remanded with orders consistent with the reversals. Thank you, Your Honors. Okay. Well, any further questions? Okay. Thank you, Mr. Smith and Ms. Doig, for your arguments this morning. We appreciate them. The case will be submitted. And you may call the next case.